**UNITED STATES of America, Plaintiff,**

v.

**J. W. WEAVER; Rea Weaver and Mrs. Edna Weaver, his wife; Jay Weaver and Mrs. Avo Weaver, his wife, Defendants.**

**Civ. No. 368.**

United States District Court,
W. D. Arkansas, Harrison Division.

Sept. 25, 1954.

See also 122 F.Supp. 577.

Charles W. Atkinson, U. S. Atty., Fort Smith, Ark., Robert E. Johnson, Asst. U. S. Atty., Greenwood, Ark., for plaintiff.

Arthur N. Wood, Yellville, Ark., for defendants.

JOHN E. MILLER, District Judge.

On June 23, 1954, the plaintiff filed a motion for summary judgment which was submitted to the court upon the pleadings, affidavits and briefs of the respective parties. On July 7, 1954, the motion was denied in accordance with an opinion filed by the court on the same date, United States v. Weaver, D.C., 122 F.Supp. 577. The pleadings and issues were discussed in that opinion and it is unnecessary to refer further to the pleadings or to the law, applicable to the questions, discussed and decided in disposing of the motion.

The case was tried to the court on its merits on September 15, 1954, and, at the conclusion of the trial, the case was submitted and taken under advisement. Thereafter, the court requested counsel for the respective parties to submit by letter to the court their further contentions, especially with respect to the provisions of the decree, if any, which should

be entered herein. The court has now considered the contentions of the parties, the issues as presented by the pleadings and the ore tenus testimony of the witnesses adduced at the trial, and makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact.

#### No. 1.

Plaintiff is the United States of America.

The defendants are citizens and residents of the Harrison Division of this court and the State of Arkansas.

Plaintiff is seeking to enjoin the defendants from carrying on certain activities as set forth in the pleadings which plaintiff contends violate certain regulations of the Secretary of the Army promulgated under the provisions of 16 U.S.C.A. § 460d.

#### No. 2.

A great deal of the ore tenus testimony adduced at the trial was in accordance with the affidavits that were before the court when it considered the motion for summary judgment and very few, if any, additional facts were developed at the trial.

During the first part of 1953, the defendant, J. W. Weaver, operating at Peel, Arkansas, rented and delivered boats to the Bull Shoals Reservoir; sometimes this was done by his sons, the defendants, Rea Weaver and Jay Weaver. During the summer of 1953, the defendant, J. W. Weaver, was advised by the supervising authority of the Bull Shoals Reservoir that he could not deliver boats to the Reservoir nor could he arrange for other persons to make such deliveries, but that there was nothing in the regulations or law to prevent him from renting boats at his place of business to any one who might desire to rent them. The defendant, J. W. Weaver, consulted his attorney and was advised that he knew of no law or regulation prohibiting him from renting boats at his place of business to any one. At that time the defendant, J. W. Weaver, was operating a small grocery business and, in connection therewith, kept and sold minnows for use by fishermen and kept and maintained boats for rental to any and all persons who might desire to rent them for use on the Bull Shoals Reservoir or on any other body of water. Following the discussion with the supervising authorities of the Reservoir area, the defendant Weaver ceased to personally deliver boats from his place of business to the lake and likewise ceased to personally remove the boats so rented from the lake to his place of business, and he has testified unequivocally that he does not intend to do anything in the future other than to offer boats for rental at his store to any one who might desire to rent them for use in places selected by the customer.

At present and since the conference above mentioned, some of the persons who rent boats from the defendant, J. W. Weaver, deliver the boats to the lake themselves without the aid of any one. Some employ guides who are usually present at the store of the defendant, J. W. Weaver, where the boats are kept, and the guide assists the customer in delivering the boat to the lake and renders other services in connection with the fishing trip of the customer. The defendants, Rea and Jay Weaver, are the sons of the defendant, J. W. Weaver, and they have been working as guides for fishing parties on the lake. There are other persons who act in a similar capacity and who, as above stated, when not engaged in guiding or other employment, are usually available at or near the store of the defendant, J. W. Weaver. However, J. W. Weaver does not employ guides and testified that he makes no suggestion to the customer as to whether he should employ a guide but leaves to the customer the decision free of any suggestion whatsoever from him as to where the boat should be used and as to whether it should be operated by the customer or by a guide.

The defendant Weaver's store is located about one mile from the lake waters and approximately six miles from the

nearest commercial boat dock, and the rental of the boats by said defendant does not occur upon any lands owned by plaintiff or under the jurisdiction of the Chief of Engineers. However, when the boat is taken from the store of the defendant, J. W. Weaver, to the lake, lands belonging to the plaintiff and under the jurisdiction of the Chief of Engineers are traversed.

The defendants, Rea and Jay Weaver, are professional guides and their services are available to any one desiring them. Some fishermen own their own boats and either of these two defendants might be employed by such a fisherman. At times the fisherman has arranged for the use of a boat or rented a boat from some other owner and, in that event, these defendants likewise may be employed by the fisherman in the same manner and for the same purposes as if the boat had been rented from their father, the defendant, J. W. Weaver. As guides they perform whatever services may be necessary or customary on a fishing expedition, including the placing of the boats on the waters of the lake and, at the conclusion of the fishing trip, they either remove or assist in removing the boat from the waters of the lake in accordance with the wishes of their employer, the fisherman. Naturally, while in the employ of the fisherman, they assist in handling the tackle, supplies and other items and often prepare meals for their employers. The defendants, Rea and Jay Weaver, have no financial interest in the business of their father, the defendant, J. W. Weaver, and own no interest whatsoever in the boats that have been heretofore and are now being rented to customers by their father, J. W. Weaver.

### No. 3.

Since the conference with the authorities in charge of the supervision of the reservoir area during the summer of 1953, the defendant, J. W. Weaver, himself, has not personally returned to his place of business from the lake any of the boats that he had rented to a customer and, since that conference, the boats have been and at the present time are handled in several ways. Sometimes the person renting the boat places it on the lake and at the conclusion of the trip returns it himself to the place of rental or to the store of the defendant, J. W. Weaver. At other times, the person renting the boat employs one of the defendants, Rea or Jay Weaver, or some one else at the place of business of the defendant, J. W. Weaver, to deliver the boat to the lake and to return it to the defendant, J. W. Weaver. At times the customer may not desire to employ a guide but has no physical means of transporting the boat from the store of the defendant, J. W. Weaver, to the lake or from the lake back to the store and, often, one of the defendants, Rea or Jay Weaver, or some other person whose chief business is that of guiding will deliver and return the boat without any charge to the person who has rented the boat. Usually, at the time the boat is rented to a person who has no physical means of transporting the boat, the customer is advised by J. W. Weaver that he (Weaver) cannot deliver the boat to the lake nor can he return it to the store when the fishing trip has ended. In such instances, the services of one of the guides, who, as above stated, is usually at the store or near thereto, can be obtained by the customer to make the delivery and return the boat. If the customer does not desire the use of a guide on the fishing trip but only desires assistance in transporting the boat to the lake and from the lake back to the store, the guide, whether he be Rea or Jay Weaver or some one else, will usually volunteer to transport the boat. The uncontradicted testimony is that the defendants, Rea and Jay Weaver, and the other guides seldom if ever make a definite charge for the transportation services regardless of whether the boat to be used has been rented from the defendant, J. W. Weaver, or was owned by the fisherman or acquired from some other place by the fisherman. The defendant, Jay Weaver, testified that the reason he and his brother, Rea, and other guides did not make a definite charge for that

service was that they were anxious to acquire the good will of fishermen and as a result build up their guide business. In other words, the transportation of the boat to and from the lake from the store of J. W. Weaver is a small item and the guides are willing to render that service in the hope that some time the fishermen will need a guide and in the selection and employment of a guide will remember the particular guide who rendered him assistance in time of need, and further that the fishermen may refer others to him when his services are needed. Even in such cases the guides themselves, though not present at the landing when the fisherman concludes his trip, will go to the lake and remove the boat therefrom and return it to the defendant, J. W. Weaver's, place of business and thus make the boat available for renting to other customers.

### No. 4.

The testimony discloses that at the time a boat is rented the defendant, J. W. Weaver, does not advise the customer that it is his duty at the conclusion of the fishing trip to arrange for the return of the boat from the water to the store. He merely tells the fisherman that when he rents the boat his obligation has been discharged. However, he assumes that the boat will be returned from the lake to the store by the customer himself or that one of the defendants, Rea or Jay Weaver, or some other guide will return the boat from the lake to the store. It is a reasonable inference from the testimony that the boats are returned to the store in most instances by defendants, Rea or Jay Weaver, or one of the other guides.

### No. 5.

The defendant, J. W. Weaver, and the defendant, Jay Weaver, each own a one-half interest in a pick-up truck. This truck is used by whichever one may desire to use it and is often used by the defendant, Jay Weaver, to transport boats to and from the lake. The operating expenses of the truck are paid by whoever is using the truck. There is no testimony that other guides use the truck in transporting boats to and from the lake, but it is reasonable to infer that if the truck is at the store and if a customer has no physical means of transporting the boat to the lake that it would be available for use by any guide for transportation of the boat.

### No. 6.

The testimony does not disclose whether other persons who are usually available at the store of the defendant Weaver for employment as guides have ever held a license issued by the Chief of Engineers, but the office of the Chief of Engineers in May, 1954, did issue such a license to the defendants, Rea and Jay Weaver, but revoked the license within a week or two thereafter on the ground that the boats of the defendant, J. W. Weaver, were being illegally placed on the lake. The testimony does disclose that not only the defendants, Rea and Jay Weaver, but others who hold themselves out as guides possess a guide license issued by the Arkansas Game and Fish Commission.

### No. 7.

When the defendant, J. W. Weaver, first began renting boats, he was uncertain as to his rights and admittedly violated the applicable regulations until the conference with the supervising authorities in the early part of the summer of 1953. Likewise, the defendants, Rea and Jay Weaver, were uncertain as to their legal rights but, after such conference, all parties in good faith thought their rights had been fixed and the action of the defendants since that time has been in accordance with what they understood their rights were under the regulations as explained to them in the conference. Soon after the conference, the supervising authorities revoked the Federal Guide License and from that time to the present there seems to have been and is now a disagreement between the defendants and the supervising authorities as to the rights of the parties under the law and the regulations.

## Discussion.

The court undertook in its opinion in the consideration of the motion for summary judgment, United States v. Weaver, supra, to declare the rights of the respective parties as they appeared from the pleadings and the affidavits then on file. The rights as declared by the court in that opinion have not been substantially altered by any testimony produced at the trial of the case on its merits, and the task that is confronting the court now is the balancing of the rights of the government and the rights under the law of the defendants as individual citizens.

The issues to be determined are of considerable public interest, not only to the duly licensed operators of boat docks but to the defendants and others similarly situated, and to the individual fisherman who does not own his own boat and is compelled when he engages in that pastime to rent a boat. The average fisherman often, without any reason understandable by a non-fisherman, desires to enter a lake at a certain place, and the fervor of every fisherman increases as he approaches his favorite spot or fishing place. He becomes very anxious to get about the business and to lose no more time than is absolutely necessary to reach that spot that he has dreamed about and to proceed to a demonstration of his skill and ability to outwit the fish even though the fish might be reluctant to cooperate. Thus, the average fisherman does not want to consume the time of driving to an established, licensed boat dock, situated in this instance approximately five miles from the place where the Weaver boats are usually placed on the lake, and be compelled to travel by boat the distance back from the established, licensed boat dock to the place where he desires to fish. Thus, he avails himself of the opportunity of renting a boat situated nearest the place where he thinks the fish are most likely to succumb to the temptation of the lure skillfully placed and artfully manipulated. As a result, a considerable trade has been established by these defendants operating from the store of defendant, J. W. Weaver, which as heretofore stated, is situated within one mile of the water of the lake and near a portion of the lake which many fishermen think is superior to any other place on the lake for fishing notwithstanding the lake in normal times has a shoreline of more than 1,200 miles. In view of these questions, the court feels that it should undertake to definitely spell out the rights of the parties to this litigation in the hope that it may be useful in determining future controversies, notwithstanding every controversy will necessarily be determined upon the particular facts then before the court.

No complaint is made that the boats of the defendant, J. W. Weaver, do not comply with the existing safety regulations applicable to all boats that are operated on the lake.

The defendants, Rea and Jay Weaver, contend that the court should require the Chief of Engineers to reinstate their Federal Guide License including license or permit from the United States Coast Guard to "carry passengers for hire." Obviously the court is without jurisdiction to consider in this case that contention, but nothing said herein should be construed to prevent a consideration of any request for reinstatement of the license, if made by said defendants, and favorable action on such request should not be refused merely because they or either of them may be employed by a person who legally rents a boat from their father and in accordance with the decree of this court.

### Conclusions of Law.

#### No. 1.

The Court has jurisdiction of the subject matter and the parties to this action. 28 U.S.C.A. § 1345; Griffin v. United States, 8 Cir., 168 F.2d 457.

#### No. 2.

The Secretary of the Army is authorized to grant leases of lands, including structures or facilities thereon, situated within the Bull Shoals Reservoir

area. The Chief of Engineers, under the supervision of the Secretary of the Army, is authorized to permit the construction, maintenance and operation of recreational facilities in the Reservoir area. 16 U.S.C.A. § 460d.

■ The above cited statute further provides that the water areas of the Reservoir shall be open to public use generally, without charge, for boating, swimming, bathing, fishing and other recreational purposes, and that ready access to and exit from such water areas along the shores of the water areas shall be maintained for public use when such use is not contrary to the public interest, and such use may be regulated under such rules and regulations as the Secretary of the Army may deem necessary. No use of any such area shall be permitted which is inconsistent with the laws for the protection of fish and game of the State of Arkansas.

Pursuant to the statutory authority the Secretary of the Army promulgated certain regulations governing the manner and terms of the use of reservoir areas. Regulation 311.2, 36 Code of Federal Regulations, Page 276, provides:

"No boat * * * shall be placed upon or operated upon any water of the reservoir for a fee or profit, either as a direct charge to a second party or as an incident to other services provided to the second party, except as specifically authorized by lease, license, or concession contract with the Department of the Army."

Regulation 311.16, provides:

"All commercial operations or activities on the waters of the reservoir or on the lands under the control of the Department of the Army around the reservoir shall be in accordance with lease, license, or other agreements with the Department of the Army."

■ The renting of boats by the defendant, J. W. Weaver, has been and is being done on property over which the plaintiff and the Secretary of the Army have no control. The boats are rented at the store of the defendant, J. W. Weaver, and neither the plaintiff nor any of its officers have any right to prohibit or regulate the actual renting of the boats at such place by the defendant, J. W. Weaver. Likewise, the plaintiff and its officers have no legal right to determine or fix the place where said boats may be used by the person or persons who rent them, and such person is free to operate a rented boat on the water area of Bull Shoals Reservoir, provided of course, that the operation is in accordance with Regulation 313.3.

### No. 3.

■ The defendant, J. W. Weaver, does not have the legal right to conduct any commercial operation or activity on the waters of the Reservoir or on the lands under the control of the Department of the Army around the Reservoir unless authorized to do so by lease, license or other agreement with the Department of the Army.

### No. 4.

■ The facts as disclosed by the testimony and found by the Court convince the Court that the defendant, J. W. Weaver, by general supervision and direction of the business of rental of boats, has been and is now indirectly causing boats to be placed upon and operated upon the water area of the Reservoir for a fee or profit, without being authorized to do so by lease, license or concession contract with the Department of the Army, and that the said defendant should be enjoined and restrained from renting boats and either directly or indirectly, personally or through an agent, transporting the boats to or from the waters of the Reservoir. The said defendant should likewise be enjoined and restrained from renting boats that he knows, or has reasonable grounds to believe, will be transported, placed upon or operated upon the waters of the Reservoir by any person, including his sons, either as an incident to other services rendered to the lessee or bailee, or for a fee or profit paid by the lessee or bailee

to such person for transporting said boat to or from the water, placing it upon the water, or operating it upon the said water, unless such person is authorized by license, lease or concession contract with the Department of the Army to transport, place upon and operate boats on said waters.

■ In other words, the defendant, J. W. Weaver, should be enjoined and restrained from renting boats except in the following three instances: (1) if the bailee or lessee provides his own transportation of the boat *both to and from* the place he uses it; (2) the bailee or lessee, without suggestion on the part of the defendant, J. W. Weaver, employs as his own agent a person to transport the boat who has a license, lease or concession contract from the Department of the Army permitting him to transport the boat across the lands controlled or owned by the Government; or (3) the bailee or lessee obtains a friend who will transport the boat without fee or profit, either directly or indirectly, or as an incident to other services.

### No. 5.

■ The defendants, Rea and Jay Weaver, should be enjoined and restrained from transporting to, placing upon or operating any boat upon the waters of the Reservoir, or from removing any boat owned by the defendant, J. W. Weaver, from the Reservoir waters and transporting it to the store or place of business of the said defendant, J. W. Weaver, for a fee or profit, either as a direct charge against the owner, lessee or bailee of the boat or as an incident to other services rendered by the said defendants, Rea and Jay Weaver, or either of them, to the defendant, J. W. Weaver, or to the lessee or bailee of the boat, unless specifically authorized to render such services by lease, license or concession contract with the Department of the Army.

■ Stated differently, the defendants, Rea and Jay Weaver, may transport across Government land or operate upon the Reservoir waters boats owned by their father, J. W. Weaver, in only two instances: (1) if they obtain a license, lease or concession contract permitting them to transport or operate the boats for a fee or profit, and they carry on such activities solely as the agent or agents of the lessee or bailee of the boat; or (2) if they transport or operate the boat, solely as the agent or agents of the lessee or bailee of the boat, and charge no fee, either directly or indirectly, to said lessee or bailee.

### No. 6.

■ The testimony does not disclose that the defendants, Mrs. Edna Weaver and Mrs. Avo Weaver, wives of the defendants, Rea and Jay Weaver, respectively, now or have ever directly or indirectly engaged in the placing upon or operating of boats upon the water area of the Reservoir, and the complaint as to said defendants should be dismissed.

### No. 7.

A decree in accordance with the above conclusions should be entered without costs to plaintiff or defendants.